NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEIDRE DENNIS and WILLIAM BONVIE, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>   v.<br><br>MYLIFE.COM, INC.,<br><br>                  Defendant. | Civil Action No.: 20-cv-954<br><br>OPINION |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

       This matter comes before the Court on defendant Mylife.Com, Inc.'s ("Defendant" or "MyLife") motion to dismiss plaintiffs Deidre Dennis ("Dennis") and William Bonvie's ("Bonvie") (collectively, "Plaintiffs") putative class-action Complaint (ECF No. 1, "Compl."), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 34). Plaintiffs opposed Defendant's motion (ECF No. 38), and Defendant replied (ECF No. 43). Pursuant to this Court's Orders (ECF Nos. 54, 68), the parties submitted supplemental briefing regarding whether: (1) Defendant is immune from Plaintiffs' suit under the Communications Decency Act, 47 U.S.C. § 230 ("Section 230" or the "CDA"); and (2) Plaintiffs have established Article III standing in light of the Supreme Court's holdings in *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). ECF Nos. 59, 61, 72, 73. The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion to dismiss is granted and the Complaint is dismissed without prejudice.

## II. BACKGROUND

### a. Factual Background[1]

This action arises out of Plaintiffs' claims that Defendant, a website operator that publishes electronic background reports containing information about individuals gathered from third parties, published false, misleading, and private information about them on its website, in violation of: (1) the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b) ("FCRA") (Count One); (2) the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("NJTCCWNA") (Count Two); (3) their right of publicity, namely that Defendant misappropriated their likeness (Count Three); and (4) their privacy rights through Defendant's public disclosure of private facts (Count Four). Compl. at ¶¶ 83–115.

Defendant publishes information on its website concerning, among other things, an individual's criminal and civil court records, liens, judgments, income, property records, work history, and contact information. *Id.* at ¶ 14. Based on this information, Defendant creates a "Public Reputation Score," which can be used by entities like creditor agencies or employers when making lending or employment decisions. *Id.* at ¶ 17. These Reputation Scores allegedly appear in over 300 million online searches a month. *Id.* at ¶ 15.

Plaintiffs allege that Defendant published their personal information—including purported salary, net worth, ethnicity, known associates, and religion—on its website. *Id.* at ¶¶ 48–69. Plaintiffs also assert that much of this private information was false or misleading. For instance, Dennis, who identifies as African American, alleges that on December 21, 2019, Defendant's website falsely identified her as Caucasian. *Id.* at ¶¶ 44–60. Moreover, Dennis alleges that Defendant falsely implied that she had a criminal record and/or was a sex offender. *Id.* at ¶¶ 52–

---

[1] The following facts are accepted as true for the purposes of the instant motion to dismiss.

57. Similarly, Bonvie alleges that in December 2018, Defendant's website falsely identified him as a Pacific Islander and listed supposed associates of his that he did not know. *Id.* at ¶¶ 61–74. The website also reported that Bonvie had liens or bankruptcy records on his background report, and included his name and likeness in his Reputation Profile. *Id.* at ¶ 64, 67. Dennis and Bonvie allege that MyLife's website assigned them a "Reputation Score" of 2.63–4.13 out of 5, and 3.08 out of 5, respectively, based on such personal information compiled in their background reports. *Id.* at ¶¶ 44–74.

While Plaintiffs acknowledge that Defendant did not initially create the information contained in their background reports,[2] they nevertheless seek to hold Defendant liable for packaging and re-publishing this information on its website without their permission. *Id.*; *see also* ECF No. 38 ("Opp.") at 3. Further, they allege that they suffered "reputational injuries" and invasion of privacy from Defendant's conduct. *Id.* at ¶¶ 60, 72; *see also* ECF No. 38 ("Opp.") at 3, 27.

### b. Procedural Background

Plaintiffs filed the Complaint on January 29, 2020, seeking damages as well as to prospectively enjoin Defendant from collecting and disseminating their background reports without their permission. ECF No. 1. After Defendant failed to timely respond to the Complaint, Plaintiffs filed a request for default on March 6, 2020 (ECF No. 6), which the Clerk of the Court entered on March 10, 2020. Magistrate Judge Edward S. Kiel then set aside the Clerk's entry of default against Defendant on September 3, 2020, "as the entry of default was not caused by the culpable conduct of defendant or its counsel, but was due to excusable neglect." ECF No. 32 at 3.

---

[2] ECF No. 61 at 5, 8 (alleging that Defendant "collects and distills information about consumers . . . from various [third party] sources").

Defendant subsequently filed the instant motion to dismiss on September 18, 2020 (ECF No. 34), which Plaintiffs opposed (ECF No. 38), and Defendant replied in support (ECF No. 43). On April 23, 2021, the Court ordered the parties to submit supplemental briefing addressing whether Section 230 bars Plaintiffs' claims against Defendant in this matter (ECF No. 54), which the parties filed on May 14, 2021 (ECF Nos. 59, 61). On July 27, 2021, the Court ordered the parties to submit supplemental briefing addressing Article III standing and the Supreme Court's recent holdings in *Transunion* (ECF No. 68), which the parties filed on August 26, 2021 (ECF Nos. 72, 73).

### III.  LEGAL STANDARD

####     a.  Federal Rule of Civil Procedure 12(b)(1)

A court must grant a motion to dismiss under Rule 12(b)(1) if it lacks subject-matter jurisdiction over the complaint. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" and, as a result, a plaintiff must have "standing" to sue. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Thus, a motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1) because standing is a matter of jurisdiction. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

"The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (alterations in original) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' *i.e.*, an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, *i.e.*, traceability of the injury to the actions of the defendant; and (3)

4

redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)), *abrogated on other grounds by Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### b. Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV.   DISCUSSION

Defendant moves to dismiss the Complaint on three grounds: (1) Plaintiffs lack Article III standing as they have failed to establish an injury in fact; (2) Section 230 immunizes Defendant from liability in this matter; and (3) Plaintiffs have failed to state a claim for relief on the underlying merits. *See generally* ECF No. 34-1 ("Def. Br."); ECF No. 59 ("Def. Supp. Br. I"); ECF No. 73 ("Def. Supp. Br. II"). Plaintiffs opposed Defendant's motion, arguing that they have sufficiently alleged a concrete harm to satisfy Article III standing, Section 230 does not apply to this case, and they have asserted plausible allegations to support their claims. *See generally* Opp.; ECF No. 61 ("Pls. Supp. Br. I"); ECF No. 72 ("Pls. Supp. Br. II"). Because standing is

jurisdictional, the Court addresses this issue at the outset. *Oh v. Collecto, Inc.*, No. 20-01937, 2021 WL 3732881, at *2 (D.N.J. Aug. 23, 2021).

### a. Article III Standing

As noted above, the Article III standing question in this case focuses on whether Plaintiffs have satisfied the injury in fact requirement, that is, that their asserted injuries are "concrete." *Transunion*, 141 S. Ct. at 2204 (citations omitted). Plaintiffs allege that they suffered concrete intangible harms—reputational injuries and an invasion of their privacy rights—resulting from Defendant's publication of their background reports on its website that contained false, misleading, and private information. *See generally* Compl. Defendant, however, avers that Plaintiffs' allegations are too speculative to establish a concrete harm as Plaintiffs have failed to assert that any third party has ever viewed their background reports on Defendant's website. Def. Supp. Br. II at 3–7.

To satisfy Article III's injury in fact requirement, Plaintiffs must allege that they have been "concretely harmed" by a defendant's violation of their rights.[3] *Transunion*, 141 S. Ct. at 2205. As relevant here, the Supreme Court has held that various intangible harms may, under certain circumstances, satisfy the concrete harm requirement. *Transunion*, 141 S. Ct. at 2204. Chief among such intangible harms are "reputational harms, disclosure of private information, . . . [and other] harm[s] associated with the tort of defamation." *Id.* at 2204, 2208 (intangible harms are

---

[3] To the extent that Plaintiffs argue that FCRA confers Article III standing in this case regardless of whether they have established the concrete harm requirement, their contentions lack merit. The Supreme Court has rejected the proposition that FCRA, which "grants a person a statutory right and purports to authorize that person to sue to vindicate that right," can usurp the concrete harm requirement. *Id.* at 2204 (holding that Congress is prohibited from conferring Article III standing upon individuals, as plaintiffs must always establish that their injuries are "concrete" within the meaning of the Constitution) (citations omitted).

considered "concrete" where they bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts") (citations omitted).

The Supreme Court's analysis in *Transunion* regarding when an intangible harm may satisfy the concrete harm requirement is particularly instructive. *Transunion* involved a class-action complaint against a website operator, Transunion, that produced credit reports containing personal information about individuals for purchase by third parties. *Id.* at 2202. In the complaint, the plaintiffs claimed reputational injuries stemming from allegations that Transunion created credit reports about each class member that contained false or misleading personal information, in violation of FCRA. *Id.* The parties, however, stipulated that only some of the class members had their credit reports disseminated to third parties. *Id.* at 2197. As for the other class members, Transunion maintained their credit reports on an internal database, not accessible to the public, and did not disseminate them to third parties. *Id.*

The Court initially held that the former group of class members demonstrated "concrete reputational harm" and thus had Article III standing to sue. *Id.* The key to the Court's reasoning was the fact that these class members' credit reports were disseminated to third parties, as "a person is injured when a [] statement. . . is published to a third party." *Id.* at 2209. Alternatively, regarding the latter group of class members, the Court held that they could not establish Article III standing on these grounds, as the mere presence of an inaccuracy or a private fact in a credit report—absent disclosure to a third party—causes no concrete harm. *Id.* at 2210 ("[T]he plaintiffs' harm is roughly the same . . . as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is.").[4]

---

[4] The Court also theorized that the *mere risk of their future reputational harm*—that is, the mere risk that their credit reports would be disclosed to third parties—may itself have constituted a concrete harm. *Id.*; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n.5 (2013) ("Our

Applying the Supreme Court's reasoning in *Transunion* to this case, both Plaintiffs have pleaded a concrete harm under a disclosure theory, as they allege that MyLife disseminated private and/or inaccurate information about them to third parties through their website. Specifically, Dennis alleges that MyLife "report[ed] about her to third parties who obtained her report and to the general public through mylife.com." Compl. ¶ 46. She alleges, for example, that the publicly available website falsely implied that she had been arrested and/or convicted of sexual offenses. *Id.* ¶¶ 52–56. Similarly, Bonvie alleges that MyLife posted his name and likeness on its public website "as a part of his 'Reputation Profile'" and also "disclosed private financial and other information about Bonvie to the general public and improperly furnished reports about Bonvie with inaccurate, net worth and other information, harming his reputation." *Id.* ¶ 64. Unlike in *Transunion*, 141 S. Ct. at 2211, where certain credit reports were maintained solely on the defendant's internal server, Defendant here has published Plaintiffs' background reports on its publicly available website (Compl. at ¶ 11), and thus disseminated the allegedly inaccurate and/or private information to third parties. *Transunion* referred to libel and slander, and noted that "for those torts, publication is generally presumed to cause a harm, albeit not a readily quantifiable harm." 141 S. Ct. at 2211. Likewise, here, we may presume harm to Plaintiffs, at this stage, because they allege that false and private information about them was published to third parties

---

cases do not [] require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a 'substantial risk' that the harm will occur."). Ultimately, however, the Court found that these class members did not establish an "imminent and substantial" risk of future reputational harm, *i.e.*, the risk of disclosure of their credit reports to third parties, because Transunion maintained their credit reports on an internal database that was not accessible to the public. *Id.* at 2211–12. In support of its finding, the Court also noted that the plaintiffs neither demonstrated that "their individual credit information would be requested by third-party businesses and provided by Transunion," nor that Transunion "would otherwise intentionally or accidentally release their information to third parties." *Id.* at 2212. As such, the Court held that these class members failed to establish Article III standing as they did not identify a concrete harm. *Id.*

through a publicly available website. *See Lujan*, 504 U.S. at 561 (1992) (on a motion to dismiss, "general factual allegations of injury resulting from defendant's conduct may suffice [to satisfy the injury in fact requirement because] . . . we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.") (citation and internal quotation marks omitted) (second alternation in original).

Accordingly, Plaintiffs have established Article III standing to pursue their claims for damages and prospective injunctive relief.[5]  Thus, as the Court has jurisdiction over the Complaint, the Court next addresses the parties' arguments as they pertain to the merits.

      b.  **Section 230**

Defendant argues that Section 230 bars Plaintiffs' claims in this matter as the Complaint seeks to hold Defendant liable for the publication of information on its website that originated from third parties.  Defs. Supp. Br. I.  Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" (47 U.S.C. § 230(c)(1)), and that "[n]o cause of action may be brought and no liability may be imposed under any . . . law that is inconsistent with this section."  *Id*. § 230(e)(3).  Courts have interpreted this language broadly and as creating federal immunity for service providers against any claims that seek to hold them liable for publishing information on the internet that originates from third parties.  *See Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 325 (D.N.J. 2015) (Section 230 confers "broad immunity" as holding interactive service providers liable for third-party communications would have "chilling

---

[5] The burden of proof required to establish the elements of Article III standing changes with each successive stage of litigation. *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998).  Accordingly, Plaintiffs may be required to provide evidence of (or more specific allegations concerning) the number of third parties that have viewed the allegedly false or private information regarding Plaintiffs on Defendant's website, at a later stage.

9

implications" for free speech on the internet); *Backpage.com, LLC v. Hoffman*, No. 13-03952, 2013 WL 4502097, at *6 (D.N.J. Aug. 20, 2013) ("[W]hat matters is not the name of the cause of action . . . [but] whether [it] inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.") (citations omitted).

As such, a defendant must establish the following to obtain Section 230 immunity: (1) it is a provider or user of an interactive computer service; (2) the asserted claims treat the defendant as a publisher or speaker of information; and (3) the challenged information has been provided by another information content provider. *Obado v. Magedson*, No. 13-2382, 2014 WL 3778261, at *4 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015) (citing Section 230(c)(1)–(2)). The Court notes, however, that Congress has enumerated five exceptions to Section 230 immunity, expressly providing that Section 230 does not have any effect on: (1) federal criminal statutes; (2) intellectual property laws; (3) state laws that are "consistent with this section"; (4) the Electronic Communications Privacy Act of 1986; or (5) sex trafficking laws. *Id.* § 230(e)(1)–(5). Nevertheless, none of these exceptions apply to Plaintiffs' claims. *See Henderson v. Source for Pub. Data*, No. 20-294, 2021 WL 2003550, at *6 (E.D. Va. May 19, 2021) ("§ 230 immunity can apply to FCRA claims."); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) (Section 230 applies to claims related to consumer protection, defamation, invasion of privacy, as such "liability [would be] inconsistent" with Section 230).

In this case, Plaintiffs assert that Defendant has failed to establish the first and third requirements for Section 230 immunity. Pls. Supp. Br. I at 7. As for the first requirement, an interactive computer service provider constitutes "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." Section 230(f)(2).

Due to this language, "courts generally construe the terms 'interactive computer service' very broadly." *Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, No. 09-4567, 2011 WL 900096, at *4 (D.N.J. Mar. 15, 2011) (citations omitted).

Here, Plaintiffs argue that Defendant is not an interactive service provider because "[t]here is nothing interactive about MyLife.com." Pls. Supp. Br. I at 7. Plaintiffs' argument lacks merit. Rather, as Defendant enables consumers to access and search through various databases on its website, it constitutes an interactive computer service provider, and the first requirement is met. *See, e.g.*, *Shah v. MyLife.Com, Inc.*, No. 12-1592, 2012 WL 4863696, at *3 (D. Or. Sept. 21, 2012), *report and recommendation adopted*, 2012 WL 4863271 (D. Or. Oct. 11, 2012) (finding MyLife immune from suit under Section 230 and that it "f[e]ll within the definition of an 'interactive computer service'"); *Henderson*, 2021 WL 2003550, at *5 (holding that several of MyLife's competitors are immune from FCRA claims pursuant to Section 230 as their "status as an interactive computer service is not lost merely because they have [gathered] the data or edit it like a publisher or distributor in its traditional capacity"); *Magedson*, 2014 WL 3778261, at *4 (finding "no dispute" that Intelius, a MyLife competitor, is a "provider[] of an interactive computer service") (citations omitted).

On the other hand, Plaintiffs concede, and the Court agrees, that Defendant has established the second requirement. Compl. at ¶¶ 42, 113 ("MyLife has published and continues to publish information . . . to the world at large . . . about Plaintiffs . . . to the detriment of Plaintiffs."); Pls. Supp. Br. I at 7 (asserting that Defendant has only failed to establish the first and third elements under Section 230). Specifically, as Plaintiffs seek to hold Defendant liable for the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter [a third party's] content," their claims fall within Section 230's purview. *Obado*

11

*v. Magedson*, No. 13-2382, 2014 WL 3778261, at *3 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015) (citations omitted).

Finally, Plaintiffs aver that Defendant has failed to establish the third requirement because Defendant, and no other sources, supposedly created the information at issue on its website. Pls. Supp. Br. I at 8–10. Consequently, Plaintiffs argue that they are not seeking to hold Defendant liable for information created by another "information content provider," as required to demonstrate immunity under Section 230. *Id.*; *see also* Section 230(f)(3) (defining an "information content provider" as any "entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service").

Nevertheless, the Complaint acknowledges that "MyLife gathers the information from other sources" and "prepar[es] . . . background report[s]" from this information. Compl. at ¶¶ 22, 29, 52; *see also* Opp. at 16 ("MyLife promotes itself as knowingly and deliberately gathering information and preparing reports that bear upon a consumer's [personal information]."). Thus, despite Plaintiffs' contentions to the contrary, the third requirement is met as Plaintiffs admittedly seek to hold Defendant liable for information created by third parties. Further, to the extent that Plaintiffs argue that Defendant created the reputation scores on its website, the reputation scores appear to derive solely from information generated by third parties. *See Gentry v. eBay, Inc.*, 121 Cal. Rptr. 2d 703, 717–18 (Cal. App. 4th Dist. 2002) (finding that eBay was not the "information content provider" for consolidated assessment scores listed on its website about consumers, as the scores were based solely on information submitted by third parties).

Even assuming *arguendo* that Defendant has established these three requirements, Plaintiffs argue that Section 230 does not apply in this case for two additional reasons. First,

12

Plaintiffs aver that Section 230 has no application to credit reporting agencies as defined by FCRA, including MyLife,[6] that "create and sell consumer reports . . . through a website." Pls. Supp. Br. I at 2. The Court finds no basis in Plaintiffs' argument as Congress did not reference FCRA within Section 230 and, as noted above, other federal courts have held that Section 230 immunizes MyLife from similar claims. See *MyLife.Com, Inc.*, 2012 WL 4863696, at *3.

Second, Plaintiffs argue that Section 230 has no application to FCRA claims as "no court has ever held that [Section 230] is a shield . . . for any type of FCRA liability." Pls. Supp. Br. I at 1. Plaintiffs are mistaken. Rather, as another federal court recently found, "Section 230 can apply to FCRA claims . . . [where] Defendants qualify for the immunity." *Henderson*, 2021 WL 2003550, at *5–6 (dismissing FCRA claims against defendants, MyLife competitors, pursuant to Section 230 where plaintiffs sought to hold defendants liable for publishing information on their website that originated from third parties). Indeed, Congress chose five exceptions for Section 230 immunity and did not include FCRA claims among them. *Id.* at *4 ("Pursuant to the canon of statutory construction of *expressio unius est exclusio alterius*, where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (citations omitted). The Court also notes that Section 230 immunity has been afforded in cases involving other federal statutory causes of action that, like FCRA, are not enumerated by Congress as an exception under Section 230. *See, e.g.*, *Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008), *as amended* (May 2, 2008) (The Fair Housing Act); *Nat'l Assoc. of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49, 66 (D. Mass. 2019) (Title III of the Americans with Disabilities

---

[6] Courts have found MyLife to constitute a credit reporting agency within the meaning of FCRA. *See, e.g.*, *United States v. MyLife.com, Inc.*, 499 F. Supp. 3d 757 (C.D. Cal. 2020).

13

Act and Section 505 of the Rehabilitation Act); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 539 (E.D. Va. 2003) (Title II of the Civil Rights Act of 1964).

Accordingly, in construing the Complaint, the Court finds that Section 230 immunizes Defendant from Plaintiffs' claims. This immunity applies to the claims related to the information's accuracy and those related to the private nature of the information, as each claim seeks to hold Defendant liable for publishing information on its website that originated from third parties.[7]

## V. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 34) is granted and the Complaint is dismissed without prejudice. An appropriate Order accompanies this Opinion. To the extent that Plaintiffs can cure the pleading deficiencies discussed herein, Plaintiffs may file an amended complaint within thirty (30) days of the date of this Opinion and Order.

**DATED**: December 20, 2021

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**

---

[7] To the extent that Defendant argues that the Complaint warrants dismissal because Plaintiffs' have failed to state a claim for relief on the underlying merits, the Court need not reach this argument because, as discussed above, dismissal is warranted under Section 230.

14